

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00638-CV

Salvador G. **MORA**,
Appellant/Cross-Appellee

v.

Sylvia Ramon **MORA**,
Appellee/Cross-Appellant

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-10478
Honorable Victor H. Negron, Jr., Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  February 26, 2014

REVERSED AND REMANDED

This appeal and cross-appeal challenge the trial court's modified final decree of divorce and judgment. The issues raised on appeal primarily relate to the characterization and division of assets, reimbursement claims, and the trial court's decision not to award attorney's fees.

### BACKGROUND

Salvador G. Mora and Sylvia Ramon Mora were married on May 9, 1992, and divorced on December 3, 2011. Prior to and during the marriage, Salvador was employed as a teacher. During

the marriage, Sylvia inherited properties from her father which she later sold. Salvador and Sylvia also purchased various properties during the marriage.

From November 28, 2011 through December 2, 2011, the parties tried certain issues relating to their divorce before a jury. In response to the questions that were submitted, the jury found that the community estate was entitled to reimbursement against Sylvia's estate in the amount of $95,288.15; however, the jury found that Sylvia's separate estate was not entitled to any reimbursement from the community estate. The jury also found that Salvador did not treat Sylvia cruelly during their marriage, and Salvador should not pay Sylvia post-divorce maintenance. Finally, the jury found identical dollar amounts were the reasonable fees for the necessary services of each party's attorney.

After the jury returned its verdict, several hearings were held before the trial court on various motions relating to the jury's findings and the characterization and division of the assets. On April 19, 2012, the trial court entered its first judgment, which was followed by a series of motions to reconsider and hearings on those motions. On July 2, 2012, the trial court set aside its April judgment and signed another judgment. After another series of hearings, the trial court set aside the July judgment and signed the judgment being appealed on October 15, 2012.

## STANDARDS OF REVIEW

### A.    *Division of Marital Property*

In a decree of divorce, the trial court must order a just and right division of the estate of the parties. TEX. FAM. CODE ANN. § 7.001 (West 2006). "Trial courts can only divide community property, [because] the phrase 'estate of the parties' encompasses the community property of a marriage, but does not reach separate property." *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011). "Texas law prohibits courts from divesting spouses of their separate property." *Shanks v. Treadway*, 110 S.W.3d 444, 448 (Tex. 2003).

"The trial court has wide discretion in dividing the estate of the parties and that division should be corrected on appeal only when an abuse of discretion has been shown." *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *see also Garza v. Garza*, 217 S.W.3d 538, 548 (Tex. App.—San Antonio 2006, no pet.). "In exercising its discretion the trial court may consider many factors and it is presumed that the trial court exercised its discretion properly." *Murff*, 615 S.W.2d at 699. These factors include: (1) the spouses' capacities and abilities; (2) benefits which the party not at fault would have derived from continuation of the marriage; (3) business opportunities; (4) education; (5) relative physical conditions; (6) relative financial condition and obligations; (7) disparity of ages; (8) size of separate estates; (9) the nature of the property; and (10) disparities in earning capacities and income. *Id*. "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision." *Garza*, 217 S.W.3d at 549. "Because in family law cases the abuse of discretion standard of review overlaps with the traditional sufficiency standards of review, legal and factual insufficiency are not independent grounds of reversible error; instead, they constitute factors relevant to our assessment of whether the trial court abused its discretion." *Id*.

"Community property does not have to be divided equally, but the division must be equitable." *Alonso v. Alvarez*, 409 S.W.3d 754, 758 (Tex. App.—San Antonio 2013, pet. denied). "A disproportionate division must be supported by some reasonable basis." *Id*. at 758-59.

B.      *Characterization and Tracing*

"Property possessed by either spouse during or on dissolution of marriage is presumed to be community property." TEX. FAM. CODE ANN. § 3.003(a) (West 2006); *see also Garza*, 217 S.W.3d at 548. "The degree of proof necessary to establish that property is separate property is clear and convincing evidence." TEX. FAM. CODE ANN. at § 3.003(b); *see also Garza*, 217 S.W.3d at 548. Clear and convincing evidence is defined as that "measure or degree of proof which will

produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. at § 101.007; *see also Garza*, 217 S.W.3d at 548.

"The characterization of property as community or separate is determined by the inception of title to the property, i.e., when a party first has a right of claim to the property by virtue of which title is finally vested." *Sink v. Sink*, 364 S.W.3d 340, 344 (Tex. App.—Dallas 2012, no pet.). Separate property includes "property owned or claimed by the spouse before marriage" and "property acquired by the spouse during marriage by gift, devise, or descent." TEX. FAM. CODE ANN. § 3.001 (West 2006).

"In order to overcome the community property presumption, the burden is on the spouse claiming certain property as separate to trace and clearly identify the property claimed to be separate." *Sink*, 364 S.W.3d at 344; *see also Garza*, 217 S.W.3d at 548. "The burden of tracing is a difficult, but not impossible, burden to sustain." *Id*. "Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property." *Sink*, 364 S.W.3d at 344; *see also Garza*, 217 S.W.3d at 548. "Separate property will retain its character through a series of exchanges so long as the party asserting separate ownership can overcome the presumption of community property by tracing the assets on hand during the marriage back to property that, because of its time and manner of acquisition, is separate in character." *Sink*, 364 S.W.3d at 344-45. "Mere testimony that property was purchased with separate property funds, without tracing the funds, is generally insufficient to rebut the community property presumption." *Id*. at 345; *see also Garza*, 217 S.W.3d at 548. "Any doubt as to the character of property should be resolved in favor of the community estate." *Sink*, 364 S.W.3d at 345; *see also Garza*, 217 S.W.3d at 548. "Further, if the evidence shows that separate and community property have been so commingled as to defy resegregation and identification, the community presumption prevails." *Garza*, 217 S.W.3d at 548.

The parties disagree regarding the proper standard of review applied by a reviewing court when considering an issue alleging error in the characterization of property. Salvador contends the standard of review is an abuse of discretion standard, while Sylvia contends the reviewing court conducts a de novo review. Although Salvador does cite case law stating that the standard is abuse of discretion, a straight abuse of discretion standard is inconsistent with the statutory clear and convincing evidentiary burden of proof. Instead, we conclude that the more appropriate standard of review is the one stated in *Viera v. Viera*, 331 S.W.3d 195, 207 (Tex. App.—El Paso 2011, no pet.). In *Viera*, the court stated the following as the applicable standard of review:

> In reviewing an alleged characterization error, we must utilize a two-pronged approach and determine first whether the trial court's finding of separate property is supported by clear and convincing evidence and, if it is not, we must then determine whether the characterization error caused the trial court to abuse its discretion in the overall division of the community estate. Thus, a party challenging the trial court's characterization must first establish error by challenging the legal or factual sufficiency of the evidence to support the separate property characterization, and must then conduct a harm analysis and show that because of the mischaracterization, the overall division of the property constitutes an abuse of discretion.

331 S.W.3d at 207 (internal citations omitted); *see also Nalbach v. Nalbach*, No. 04-11-00802-CV, 2013 WL 1641478, at *2 (Tex. App.—San Antonio Apr. 17, 2013, no pet.) (applying this standard) (mem. op.).

In undertaking the first prong of this review where the party with the burden of proof challenges the characterization, "we will find the evidence to be legally insufficient only if there is no evidence to support the trial court's [] finding it was community property *and* if the separate status of the property is conclusively established." *Nalbach*, 2013 WL 1641478, at *2. "In reviewing for factual sufficiency, we review all of the evidence, giving due consideration to evidence the factfinder could have reasonably found to be clear and convincing, to determine whether the trier of fact could reasonably conclude that it is 'highly probable' that the property is

separate." *Id.* A "factual sufficiency challenge will fail if the evidence is insufficient to produce in the mind of the trier of fact a firm belief or conviction as to the property's separate property character." *Id.*

If we determine that the trial court erred in characterizing the property, we will reverse only if the "mischaracterization affected the just and right division of the community estate." *Garza*, 217 S.W.3d at 549. If a reversal is required, "we must remand the entire community estate for a just and right division based upon the correct characterization of the property." *Id.* "If, on the other hand, the mischaracterization of the property had only a *de minimis* effect on the trial court's just and right division, then we need not remand the cause to the trial court." *Id.*

### DEVINE PROPERTY RENTAL INCOME

In his first issue, Salvador contends the trial court erred in dividing the rental proceeds for the property located in Devine, Texas that were paid after the date of the parties' divorce because those rental proceeds were his separate property. By order dated January 23, 2012, the trial court ordered all of the rental proceeds to be paid into the registry of the court. The parties do not dispute that the date of the divorce was December 3, 2011.

Salvador argues that the rental proceeds could not be community property because they were paid after the parties were divorced. We agree. "Community property consists of property, other than separate property, acquired by either spouse ***during the marriage***." TEX. FAM. CODE ANN. § 3.002 (West 2006). By definition, property acquired after the marriage ended on the date of divorce could not be community property and could not be divided by the trial court. *See Pearson*, 332 S.W.3d at 363 (trial court can only divide community property); *Shanks*, 110 S.W.3d at 448 (trial court prohibited from divesting title to separate property).

Sylvia argues the trial court did not err in dividing the rental proceeds because the trial court initially awarded the property to her. Because the trial court signed a modified divorce

decree, however, the first judgment was vacated and had no effect. *See B & M Mach. Co. v. Avionic Enterprises, Inc.*, 566 S.W.2d 901, 902 (Tex. 1978); *Anderson v. Teco Pipeline Co.*, 985 S.W.2d 559, 562 (Tex. App.—San Antonio 1998, pet. denied). Accordingly, Sylvia cannot rely on the prior judgment to support her contention that she was entitled to a portion of the rental proceeds.

Sylvia also contends that Salvador waived this complaint because he accepted his half of the rental proceeds from the court's registry. Sylvia relies on the legal proposition that "'A litigant cannot treat a judgment as both right and wrong, and if he has voluntarily accepted the benefits of a judgment, he cannot afterward prosecute an appeal therefrom.'" *Tomsu v. Tomsu*, 381 S.W.3d 715, 716 (Tex. App.—Beaumont 2012, no pet.) (quoting *Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002, 1004 (1950)). This argument, however, disregards the exception to the rule which provides, "Where an appellant accepts only that which appellee concedes, or is bound to concede, to be due him under the judgment he is not estopped to prosecute an appeal which involves only his right to a further recovery." *Carle*, 234 S.W.2d at 1004. Although intermediate appellate courts also require a showing that economic circumstances must have compelled the appellant to accept those benefits, *see Tomsu*, 381 S.W.3d at 716, we do not believe the acceptance of benefits doctrine should be strictly applied in this case where the benefits accepted were a portion of Salvador's separate property which the trial court was prohibited from divesting. *See Shanks*, 110 S.W.3d at 448.

For the foregoing reasons, we hold the trial court erred in awarding Sylvia one-half of the rental proceeds, and Salvador's first issue is sustained.

## SALVADOR'S RETIREMENT BENEFITS

Salvador raises two issues with regard to the division of retirement benefits. First, he contends that the trial court erred in awarding Sylvia a percentage of the retirement benefits using

a fraction that began on the date of marriage and ended on July 1, 2012, because the date of divorce was December 3, 2011. Second, Salvador contends the DROP account is a retirement benefit subject to the same division as the retirement annuity.

A.      *Trial Court's Findings of Fact and Conclusions of Law*

The trial court made the following pertinent findings and conclusions regarding Salvador's retirement benefits:

> During [Salvador's] employment at the school district, he accumulated retirement benefits administered by the Texas Teacher's Retirement System ("TRS"). He has accumulated 28 years of service. The marriage lasted 19 years and 7 months.

> Sylvia R. Mora is entitled to a 50% portion of the benefits from the beginning of the marriage until July 1, 2012 when the court decided to resolve the issue of a just and right division of the marital property. July 1, 2012 was used as the end date by the court because a just and right division of the property was still being litigated at that time between the parties.

> Salvador Mora's retirement package consists of a retirement annuity and a DROP account amount.

> The community value of the retirement benefit is 19/28ths. Therefore, the community has 67% of the present value of the retirement and the estimated present value is $389,092.00. The DROP account, however is 100% community since all of the deposits for that account were during the marriage. The court finds that the DROP account amount is $96,674.00.

> The estimated value of the community interest in the TRS retirement package is $485,766.00, assuming that Salvador Mora, who is 68, has a life expectancy of 15.08 years (Social Security Admin. Life Table).

The trial court then awarded 50% of the TRS retirement package value to each party in dividing the marital estate.

B.      *Retirement Annuity*

With regard to the trial court's use of the July 2, 2012 date as opposed to the December 3, 2011 date in calculating the community value of the retirement annuity, the parties filed a stipulation in the court on August 26, 2013, agreeing that the December 3, 2011 date should be

used. Therefore, the parties agree that the trial court erred in miscalculating the community value of the retirement annuity.

### C. DROP Account

The cases cited by Salvador support his assertion that the DROP account is part of his retirement benefits, and this fact also was confirmed by the TRS representative who testified at one of the hearings.[1] *Stavinoha v. Stavinoha*, 126 S.W.3d 604, 610-12 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Walker v. Walker*, No. 04-98-00537-CV, 2000 WL 374641, at *4 (Tex. App.—San Antonio Apr. 12, 2000, pet. denied) (not designated for publication). Rather than discussing the trial court's findings, Sylvia contends that the QDRO used by the trial court only splits the community interest in Salvador's retirement, including the DROP account. Even assuming Sylvia is correct, the trial court's finding that the DROP account was 100% community property affected the division of the marital estate.

### $300,000 EXPENDED BY SYLVIA'S SEPARATE ESTATE ON COMMUNITY ESTATE

Salvador next contends the trial court erred in awarding Sylvia's separate estate a $300,000 reimbursement, asserting the jury found Sylvia's separate estate was not entitled to any reimbursement. Salvador notes that Sylvia failed to trace the use of separate property funds to any community asset. Sylvia responds that the trial court did not award a reimbursement, but considered the depletion of her separate estate as a factor in the just and right division of the marital estate.

---

[1] The TRS representative stated that "the DROP was an opportunity for members to put a lump sum of money away" during which "they ceased to earn salary and service credits" toward retirement. The TRS representative further stated, "that DROP represents three years of his contributions" toward retirement. Finally, in response to whether in "the typical QDRO from a judge — the ex-wife receives one-half of the TRS and one-half of the DROP over the marriage," the TRS representative responded, "I would say the usual is that the Court usually awards half of whatever was acquired during the marriage."

The trial court's findings of fact and conclusion of law support Sylvia's view of the manner in which the trial court considered this issue. The trial court found, "During the marriage Sylvia R. Mora put approximately $300,000 of her inherited separate funds into the marriage and the community consumed these funds for various living expenses and vacations." The trial court then concluded that this factor, among other findings, justified the division of property set forth in the judgment.

Salvador relies on the law of reimbursement to contend the trial court erred in considering evidence regarding the contribution by Sylvia's estate. "A claim for reimbursement is an equitable claim arising upon dissolution of a marriage when funds from one marital estate have been expended to benefit another marital estate." *Roberts v. Roberts*, 402 S.W.3d 833, 838 (Tex. App.—San Antonio 2013, no pet.) (citing *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982)). "A spouse seeking reimbursement must establish that the contribution was made by one marital estate to another, that the contribution was reimbursable, and the value of the contribution." *Id*. In this case, however, the trial court did not order reimbursement, nor could it have entered such an order, because "one contribution that is nonreimbursable is expenditures for the living expenses of a spouse." *In re Marriage of Collier*, No. 07-09-00146-CV, 2011 WL 13504, at *11 (Tex. App.—Amarillo Jan. 4, 2011, no pet.) (citing TEX. FAM. CODE ANN. § 3.409(2) (West 2006)) (mem. op).

Salvador also challenges the trial court's finding that the $300,000 was consumed by the community for living expenses. Salvador argues that without proper tracing, the trial court's finding that the funds were used by the community is not supported by sufficient evidence. The concept of tracing, however, does not apply in this situation. Tracing is applied when the party is seeking to have an asset characterized as separate property. *See Sink*, 364 S.W.3d at 344 ("Tracing involves establishing the separate origin of the property through evidence showing the time and

means by which the spouse originally obtained possession of the property."). Instead of the principles of tracing, this finding is simply reviewed under traditional sufficiency standards. The testimony at trial established that Sylvia sold $500,000 of the properties she inherited from her father during the marriage. Although there was some evidence offered as to the location of approximately $200,000 of those funds, the Moras' accountant testified that the balance of the sales proceeds were deposited into various bank accounts, with some money being used to pay off debt. Sylvia testified that she put the balance of the money into the community. Salvador testified that he did not know how much money went into or out of the marriage because Sylvia monitored the money. Salvador did admit that the couple went on several vacations at which money was spent on gambling, and the tax returns reflected the following amounts spent on gambling losses: (1) $63,500 in 2008; (2) $21,686 in 2009, and (3) $26,490 in 2010. Although these losses equaled the amount of the winnings from gambling,[2] the trial court could have inferred from this evidence that large amounts of money were spent by the community on vacations and gambling which Salvador's salary could not have supported. This evidence is sufficient to support the trial court's finding that the $300,000 was consumed by the community.

With regard to considering the depletion of these separate funds in the just and right division of the marital estate, the trial court clearly may consider the size of the parties' separate estates in making the division. *Murff*, 615 S.W.2d at 699. Accordingly, it was not an abuse of discretion for the trial court to consider the expenditure of a party's separate estate during the marriage as a factor.

---

[2] The Moras' accountant testified that the losses were only deductible up to the amount of the winnings; however, this does not foreclose the possibility that the losses were greater than the winnings.

**FAIRFORD DRIVE CONVEYANCE**

Sylvia contends the trial court erred in characterizing the real property located at 5002 Fairford Drive as community property because the property was her separate property. No one challenges the trial court's finding that the property was community property when it was acquired. The deed signed when the property was acquired listed Salvador "A Married Person" as the grantee. The dispute arises from Salvador's subsequent execution of a deed conveying a ½ community interest in the property to Sylvia. The deed is from Salvador as grantor to Sylvia as grantee and conveys a "one-half (1/2) undivided community interest in and to" the property.

With regard to the conveyance, the trial court concluded that the deed was voluntarily executed and was an interspousal gift from Salvador to Sylvia and that the property became the sole and separate property of Sylvia. The trial court also, however, entered an alternative conclusion that awarding the property to Sylvia would be just and right even if the property remained as community property. The trial court further made alternative findings regarding the division of the overall community estate whether the property was considered community or separate.

Salvador contends that the original deed conveyed the land only to him because of Sylvia's credit issues, and the subsequent deed was intended only to confirm that the property was community property and that Sylvia had a ½ interest in the property. Salvador testified that the attorney who prepared the deed advised him to convey the ½ interest so the deed records would reflect Sylvia's ½ interest. The attorney who prepared the deed denied making such a statement and testified that the deed conveyed Salvador's ½ community interest in the property to Sylvia.

"A gift is a transfer of property made voluntarily and gratuitously, without consideration." *In re Marriage of Skarda*, 345 S.W.3d 665, 671 (Tex. App.—Amarillo 2011, no pet.); *see also Magness v. Magness*, 241 S.W.3d 910, 912 (Tex. App.—Dallas 2007, pet. denied). "The existence

of a gift requires sufficient proof of: (1) intent to make a gift; (2) delivery of the property; and (3) acceptance of the property." *In re Marriage of Skarda*, 345 S.W.3d at 671; *see also Magness*, 241 S.W.3d at 912. "The intent of the donor is the principal issue in determining whether a gift was made." *In re Marriage of Skarda*, 345 S.W.3d at 671.

"A deed for property from one spouse as grantor to the other spouse as grantee creates a rebuttable presumption that the grantee spouse received the property as separate property by gift." *In re Marriage of Skarda*, 345 S.W.3d at 671; *see also Magness*, 241 S.W.3d at 912. "The presumption may be rebutted by proof the deed was procured by fraud, accident, or mistake." *Magness*, 241 S.W.3d at 912-13. "Whether property given by one spouse to the other is a gift and the recipient's separate property is a fact-intensive decision." *In re Marriage of Skarda*, 345 S.W.3d at 671. The trial court, as the fact-finder in this case, is the sole judge of the credibility of the witnesses and may accept or reject any or all of a witness's testimony. *In re Marriage of Skarda*, 345 S.W.3d at 672; *see also Magness*, 241 S.W.3d at 913.

In this case, the testimony of Salvador and the attorney was conflicting; however, the language of the deed from Salvador to Sylvia is unambiguous. Accordingly, the trial judge could have chosen to disbelieve Salvador's testimony, and the evidence is sufficient to support the trial court's characterization of the property as Sylvia's separate property.

The trial court made alternative findings regarding the division of the overall community estate to take into consideration the alternatives that the property could be community or separate. The trial court found that if the Fairford Drive property is community, Sylvia would receive 54% of the community estate, while Salvador would receive 46%. The trial court alternatively found that if the Fairford Drive property is separate, Salvador would receive $44,067.50 more of the community assets; however, the trial court found this amount would be offset by not requiring Sylvia to repay the reimbursement amount of $47,644.07 (50% of the $95,228.18 which the jury

found Sylvia's separate estate owed the community estate). Because the trial court took the reimbursement from Sylvia's separate estate into consideration in the division of the community estate, Salvador's issue pertaining to the trial court's failure to enter a judgment reimbursing him is overruled.

## POTEET PROPERTY

Sylvia contends the trial court erred in characterizing the real property in Poteet as community property because it was her separate property. It is undisputed that the property was acquired during the marriage; however, the dispute arises over a subsequent assignment Salvador signed after the property was sold through owner financing. In this regard, the trial court made the following findings and conclusions:

> The property was sold for $100,000. On August 25, 2010, Salvador Mora assigned to Sylvia R. Mora all of his right, title and interest to the proceeds arising out and from the note. After the note went into default, the property was foreclosed upon on or about April 5, 2011. The foreclosure deed was in the name of Sylvia R. Mora only.

> Even though the foreclosure deed was only in Sylvia R. Mora's name, and even though Salvador Mora had made the assignment, the court nonetheless awards the property to Salvador Mora to achieve a just and right division of property in this case.

The value of this property was included in the trial court's overall value of the community estate.

In characterizing this property, the trial court was required to construe the language of the assignment signed by Salvador. *Dynergy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009) (noting unambiguous contract is construed as a matter of law). In the assignment, Salvador assigned "all of his right, title and interest in and to the proceeds due on a note secured by Deed of Trust dated October 7, 2009, wherein I am one of the payees and one of the Beneficiaries." During trial, the attorney who prepared the assignment testified that the assignment conveyed Salvador's interest in both the note and the deed of trust. If the assignment

had included Salvador's interest in the deed of trust, he likely would have assigned his interest in the property since the deed of trust contained the right to foreclose on the property in the event of a default. The plain language of the assignment, however, establishes that only the note proceeds were assigned. The reference to the Deed of Trust is simply used to define the note that was the subject matter of the assignment. Accordingly, the evidence is sufficient to support the trial court's characterization of the Poteet property as community property.

## USAA FUNDS

Sylvia contends that the trial court erred in failing to characterize the entire amount in the USAA bond fund and annuity as her separate property because she adequately traced the monies in those accounts to the sale of her inherited separate property. Neither party disputes the trial court's finding that $129,000 of the USAA bond fund is Sylvia's separate property; instead, Sylvia's issue relates to the $26,580.54 balance in that bond fund and the annuity.

The evidence at trial showed that Sylvia sold properties inherited from her father with owner financing. Sylvia then deposited the payments on those properties into a savings account which was then used to buy a bond fund and an annuity. Both Sylvia and the Moras' accountant testified that she deposited the entire amount of the payments into the savings account, which included both principal and interest. Because the interest was community property, Sylvia commingled the community and separate property and provided no evidence to identify which portions of the bond fund and annuity were purchased using the principal portion of the payments and which portions were purchased using the interest portion of the payment. Accordingly, the evidence supports the trial court's findings that the balance in the USAA bond fund and the USAA annuity were community property.

**ATTORNEY'S FEES**

Sylvia contends the trial court abused its discretion in failing to award her attorney's fees. The trial court has broad discretion in determining whether to apportion attorney's fees in a divorce action as part of a just and right division of property. *See Henry v. Henry*, 48 S.W.3d 468, 480 (Tex. App.—Houston [14th Dist.] 2001, no pet.). A trial court does not abuse its discretion in ordering each party to pay their own attorney's fees as part of a just and right division. *See Mandell v. Mandell*, 310 S.W.3d 531, 542 (Tex. App.—Fort Worth 2010, pet. denied).

Sylvia contends the trial court should have awarded her attorney's fees because she is medically disabled and because "she has had to go through herculean efforts to obtain a reasonably proportionate division of the parties' estate." Some of these efforts, however, were directed at Sylvia's successful attempts to have the trial court characterize property as her separate property which was then awarded to her. The trial court could have taken into consideration the separate property Sylvia retained and that part of the community assets she was awarded included cash in accounts that Sylvia could use to pay her attorney's fees. Under the facts of this case, the trial court did not abuse its discretion in requiring each party to pay their own attorney's fees.

**MISCELLANEOUS FINDINGS**

In addition to the findings mentioned in reference to the other issues addressed in this opinion, Salvador challenges several other findings of fact made by the trial court.

*A.      Immaterial Findings*

Salvador contends that several findings made by the trial court were evidentiary and immaterial, including the findings regarding the date of marriage and the date of divorce. Salvador does not, however, explain how these findings affected the just and right division of the estate.

### B. *Fairford Home Equity Loan Payment*

The trial court found that the parties obtained a home equity loan on the Fairford Drive property in the amount of $90,000. The trial court further found that Sylvia paid off the home equity loan from: (1) her separate inherited funds that she had on deposit at Pentagon Savings; and (2) the payoff balance received from the sale of one of the properties Sylvia inherited.

Sylvia testified that she used $10,000 in a savings account which was in existence prior to the marriage and in her name and $72,000 from the balance paid on the sale of one her inherited properties to pay the balance of the home equity loan. Copies of the checks used to pay the balance were introduced into evidence. There is no conflicting evidence regarding the $72,000; this money was the payoff balance of a portion of the Los Lomas ranch sold to David Castro and was Sylvia's separate property. There is, however, some testimony that monies from a lease were deposited into the Pentagon Savings account and no evidence was introduced to trace the $10,000 to money in the account prior to the marriage or from sales of Sylvia's separate property;[3] therefore, Sylvia failed to produce clear and convincing evidence to show that the $10,000 was paid from her separate property.

### C. *Sylvia's Separate Property Not Liquid or Income Producing*

The trial court found "[t]he separate real estate holdings of Sylvia R. Mora are unimproved raw land. They are not income producing. They are illiquid assets." Salvador contends the evidence is insufficient to support these findings because Sylvia turned down an offer to sell one tract of land and made no effort to list another tract.

Although Sylvia testified that she once turned down an offer to sell her remaining acreage in Los Lomas, the testimony elicited during cross-examination did not include any date reference

---

[3] Although Sylvia testified that some of the sales proceeds from her separate property were deposited into the account, she also testified that "we made the deposits from the lease to Pentagon." (3RR132)

as to when this offer was made. Sylvia testified that investors presently were not interested in purchasing the remaining acreage of the Los Lomas land because the city decided not to put in the infrastructure to develop the land. Sylvia also testified that she previously had the land in Whispering Hills listed for sale, but was told that it would probably never sell. Sylvia's testimony supports the trial court's findings regarding her separate assets not being liquid or income producing.

## CONCLUSION

The trial court erred in awarding Sylvia 50% of the rental income from the property located in Devine, Texas. The trial court also erred in mischaracterizing the community value of Salvador's retirement benefits. Finally, although the evidence supports a finding that Sylvia paid $72,000 of the balance of the home equity loan on the Fairford Drive property from her separate property, the evidence does not support the trial court's finding that Sylvia paid the entire balance of that loan from her separate property.

During oral argument, the parties were asked whether certain mischaracterizations by the trial court could be deemed to have had only a *de minimis* effect on the just and right division of the community estate. *Garza*, 217 S.W.3d at 549. Both parties appeared to agree that the trial court's mischaracterization of Salvador's retirement benefits would require a remand. Because this court is unable to quantify the dollar value of the trial court's mischaracterizations, we cannot hold that they are *de minimis*. Accordingly, we reverse the trial court's judgment and remand the cause for a just and right division of the community estate. On remand, the holdings of this court in this opinion with regard to the characterization of property and the trial court's ability to consider certain facts in making a just and right division will be considered law of the case. *See Loram Maintenance of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006) ("The 'law of the case'

doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages.").

Catherine Stone, Chief Justice